UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60120-CR-COOKE/TORRES
18 U.S.C. § 371

UNITED STATES OF AMERICA

v.

STUART ROSENFELDT,

        Defendant.

_____/

## INFORMATION

The United States Attorney charges that, at all times relevant to this Information:

### GENERAL ALLEGATIONS

#### Defendant and Related Parties

1. STUART ROSENFELDT (hereinafter referred to as "ROSENFELDT") was an attorney admitted to practice law in Florida. In early 2005, ROSENFELDT, Scott Rothstein (hereinafter referred to as "Rothstein"), and Russell Adler opened the law firm of Rothstein, Rosenfeldt, and Adler, P.A. (hereinafter referred to as "RRA"). ROSENFELDT and Rothstein were the equity partners of the firm.

2. The offices of RRA were located at 401 East Las Olas Boulevard, Fort Lauderdale, Florida in the Southern District of Florida and elsewhere. The law firm employed approximately 70 attorneys and 150 staff members and engaged in the practice of law involving a wide range of specialties, including labor, employment, corporate, commercial and personal injury law. Scott Rothstein was the Chief Executive Officer and Chairman of RRA.

1

3. Rothstein and RRA maintained approximately 38 bank accounts at TD Bank, which included operating accounts, payroll accounts, and trust accounts. Rothstein and RRA maintained at least four bank accounts at Gibraltar Private Bank and Trust (hereinafter referred to as "Gibraltar Bank"). RRA maintained bank accounts at Colonial Bank, N.A. (now known as Colonial Branch Banking and Trust Company) and Sterling Bank (now known as Iberiabank). Defendant ROSENFELDT maintained a bank account at the aforementioned Colonial Bank, N.A. (hereinafter referred to as "Colonial Bank"). A co-conspirator (hereinafter referred to as Co-conspirator A") maintained a bank account at Equitable Bank (now known as First United Bank) in Fort Lauderdale, Florida. The deposits of TD Bank, Gibraltar Bank, Colonial Bank, Sterling Bank, and Equitable Bank were insured by the Federal Deposit Insurance Corporation.

The Federal Election Commission
and Regulation of Federal Elections

4. The Federal Election Commission (FEC) was an agency of the executive branch of the government of the United States that administered and enforced the Federal Election Campaign Act of 1971, as amended, Title 2, United States Code, Sections 431 through 455 (hereinafter referred to as the "Election Act.")

5. The FEC was responsible for providing accurate information to the public about the amounts and sources of campaign contributions, and it used quarterly reports to administer and enforce the Election Act.

6. Title 2, United States Code, Section 441f makes it unlawful for any person to make a contribution in the name of another, including reimbursing a third person, before or after that third person's contribution, as an inducement to make that contribution, or for any person to permit his or her name to be used to make such a contribution.

7. John McCain (hereinafter referred to as "McCain") was a candidate in the 2008 federal election for the President of the United States.

8. McCain Victory 2008, McCain-Palin Victory 2008, and McCain Victory Florida were joint fundraising committees that solicited and accepted contributions for McCain's 2008 primary and general election campaign, for the Republican National Committee, and for various Republican state committees.

9. Charlie Crist (hereinafter referred to as "Crist") was a candidate in the 2010 federal election for the United States Senate from the State of Florida.

10. McCain Victory 2008, McCain-Palin Victory 2008, McCain Victory Florida, and the Charlie Crist for U.S. Senate campaign were required to file quarterly reports with the FEC identifying each person who made a contribution during the reporting period whose contribution or contributions for that calendar year aggregated over $200.

## COUNT 1

1. The General Allegations section of this Information is realleged and expressly incorporated herein as if set forth in full.

2. From in or about early 2005 through in or about November 2009, in Broward County, in the Southern District of Florida and elsewhere, the defendant

**STUART ROSENFELDT,**

knowingly and willfully combined, conspired, confederated, and agreed, with co-conspirator Rothstein and with other persons known and unknown to the United States Attorney, to:

(a) commit an offense against the United States, that is, to knowingly and willfully violate the FECA by making contributions in the names of other persons, aggregating $25,000 and more in a calendar year, in violation of 2 U.S.C. §§ 437g(d)(1)(A)(i) and 441f;

3

(b) defraud the United States by impairing, impeding, obstructing, and defeating the lawful functions and duties of the FEC;

(c) under color of law, deprive persons of the rights, privileges, and immunities secured and protected by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures, which includes the right not to be arrested without probable cause and the right to be free from the use of unreasonable force by law enforcement officers, in violation of Title 18, United States Code, Section 242; and

(d) knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, in violation of Title 18, United States Code, Section 1344.

## OBJECTIVE OF THE CONSPIRACY

3. The objective of the conspiracy was to generate money for defendant ROSENFELDT and his co-conspirators by: (a) increasing the apparent political influence of RRA by utilizing certain attorneys and administrative personnel of RRA, and others persons associated with RRA, to unlawfully make prohibited political campaign contributions and to conceal from the FEC and the public the true source of the funds utilized to make those political campaign contributions and thereby obtain government contracts for RRA, Rothstein's businesses, and the businesses of Rothstein's clients; (b) issuing checks drawn on accounts in order to unlawfully utilize the "float" period, in furtherance of a scheme commonly known as "check kiting;" and (c) maintaining RRA's positive public image through the assistance of law enforcement.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

4

## Campaign Finance Fraud

4. Rothstein enlisted certain attorneys and administrative personnel of RRA, including defendant ROSENFELDT, along with other individuals, to make political contributions to the political campaigns of McCain, Crist, and other federal, state, and local candidates for political office.

5. Rothstein enlisted defendant ROSENFELDT and other individuals to contribute to the McCain campaign and the Crist campaign by agreeing that RRA would illegally reimburse the attorneys, administrative personnel, and other individuals for the political contributions which defendant ROSENFELDT and others made to McCain and Crist.

6. Defendant ROSENFELDT, certain attorneys and administrative personnel of RRA, and other individuals made hundreds of thousands of dollars in contributions to the presidential primary campaign of McCain and the United States Senate campaign of Crist, knowing that the contributions would be unlawfully reimbursed by RRA.

7. Co-conspirator Rothstein "bundled" those contributions, and thereby received credit from the McCain and Crist campaigns for having secured those contributions.

8. In or about May 2008, defendant ROSENFELDT contributed $140,000 to McCain Victory 2008 on behalf of himself and his spouse.

9. In or about May 2008, defendant ROSENFELDT received a check from RRA in the amount of $140,000 reimbursing him for the contribution he made, on behalf of himself and his spouse, to McCain Victory 2008.

10. In or about October 2008, defendant ROSENFELDT and other shareholders of RRA, one of their spouses, and one of the administrative personnel of RRA, each made contributions to McCain-Palin Victory 2008, in amounts ranging from approximately $30,000 to approximately $124,000.

11. During calendar year 2008, co-conspirator Rothstein, some of the shareholders of RRA, and their spouses each made contributions to McCain Victory Florida.

12. As defendant ROSENFELDT became aware, each of the contributions made by the other RRA shareholders, their spouses, and administrative personnel to McCain-Palin Victory 2008, McCain Victory 2008, and McCain Victory Florida described above, would be and were unlawfully reimbursed by RRA.

13. Rothstein, defendant ROSENFELDT, other lawyers and employees of RRA, and clients and other persons associated with RRA contributed a total of approximately $239,000 to the Crist campaign for the United States Senate.

14. At least $26,000 in contributions made to the Crist campaign for the United States Senate was illegally reimbursed by RRA.

15. Defendant ROSENFELDT and his coconspirators attempted to conceal from the FEC and the public the unlawful nature of the reimbursements by fraudulently claiming that the reimbursement checks were payments for bonuses or miscellaneous expenses.

## Check Kiting Scheme

16. In or about February 2006, while RRA was experiencing financial difficulties and required a source of funds to maintain the law firm's operations, Rothstein requested that Co-conspirator A utilize his account at Equitable Bank in order to issue a check payable to one of the RRA accounts.

17. In or about May 2007, Rothstein requested that defendant ROSENFELDT utilize his account at Colonial Bank in order to issue a check payable to one of the RRA accounts.

18. Rothstein requested that the chief financial officer at RRA (hereinafter referred to as the "RRA Chief Financial Officer"), simultaneously to the transactions referenced in overt acts 16

6

and 17, issue checks payable to either defendant ROSENFELDT or Co-conspirator A in approximately the same amount of, or in an amount slightly higher than, the checks issued by defendant ROSENFELDT and Co-conspirator A.

19. Having simultaneously issued and deposited checks between the accounts of defendant ROSENFELDT and Co-conspirator A and the RRA accounts, defendant ROSENFELDT, Rothstein, and their co-conspirators would unlawfully obtain beneficial financing for RRA from the financial institutions during the "float" period, which was the period of time that it took for the checks drawn on Equitable Bank, Colonial Bank, and various RRA bank accounts to clear.

20. Rothstein, on occasion, told co-conspirators to hold the checks drawn on the RRA accounts (as described in overt act 18) for a day or two and not to immediately deposit the checks in order to allow sufficient time for the checks drawn on the accounts at Equitable Bank and Colonial Bank to post to the various RRA accounts.

21. From in or about February 2006 through February 2008, the RRA Chief Financial Officer issued checks from RRA accounts to the accounts of defendant ROSENFELDT and Co-conspirator A at Colonial Bank and Equitable Bank, respectively, in amounts ranging from $26,000 to $330,000. These checks were deposited into bank accounts at Colonial Bank and Equitable Bank. The potential loss faced by these banks as a result of the check kiting activities described herein totaled $478,903.00.

22. From in or about February 2006 through February 2008, the RRA Chief Financial Officer deposited, into the accounts of RRA, checks issued from defendant ROSENFELDT and Co-conspirator A drawn on Colonial Bank and Equitable Bank, respectively, and in amounts ranging from $4,000 to $400,000, totaling in excess of $10,000,000.

### The Escort and Her Boyfriend

23. In or about September 2009, defendant ROSENFELDT met with Rothstein to discuss a threat to publicly expose defendant ROSENFELDT's sexual relationship with a paid escort, which the paid escort's boyfriend made to defendant ROSENFELDT.

24. On or about September 21, 2009, defendant ROSENFELDT and Rothstein met with a high ranking law enforcement officer of the Broward Sheriff's Office (hereinafter referred to as "the BSO Official") at the offices of RRA to discuss the threats being made to defendant ROSENFELDT by the boyfriend of the escort.

25. During that meeting, and in subsequent conversations, defendant ROSENFELDT, Rothstein, and the BSO Official spoke with one another in order to facilitate having the escort and her boyfriend threatened with arrest so as to induce them to refrain from publicly disclosing the sexual interaction between the escort and defendant ROSENFELDT.

26. Rothstein and defendant ROSENFELDT instructed the BSO Official that a police report not be filed regarding the planned confrontation between the police, the escort, and the boyfriend of the escort.

27. Defendant ROSENFELDT provided the BSO Official with the escort's first name, address, and telephone number.

28. The BSO Official contacted a BSO Detective who worked in Strategic Investigations Division Strategic Investigations Division of the Broward Sheriff's Office (hereinafter referred to as the "SID Detective") to assist him in the matter.

29. On or about September 22, 2009, the SID Detective caused a person employed by Broward Sheriff's Office to conduct a background check of the escort.

30. On or about September 22, 2009, the SID Detective, along with two other law enforcement officers, unlawfully entered the residence of the escort and her boyfriend, where:

    a. the officers searched the residence of the escort and her boyfriend;

    b. the officers restrained the boyfriend by placing him in handcuffs;

    c. the SID Detective seized the escort's cellular telephone and deleted any evidence of the escort's relationship with defendant ROSENFELDT; and

    d. the SID Detective instructed the escort to leave Florida or she would be arrested.

31. On or about September 23, 2009, the escort was driven to the airport by two law enforcement officers and instructed to return to Pennsylvania.

32. On or about September 24, 2009, Rothstein paid $1,500 to the BSO Official for his assistance in the matter involving the escort and defendant ROSENFELDT.

All in violation of Title 18, United States Code, Section 371.

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

_____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

**STUART ROSENFELDT,**

    **Defendant.**
_____/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division**: (Select One)

 Miami ___  Key West ___
 FTL  √   WPB ___  FTP ___

New Defendant(s) ___ Yes ___ No
Number of New Defendants ___
Total number of counts ___

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) ___
   List language and/or dialect ___

4. This case will take   0   days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | | (Check only one) | |
   |---|---|---|---|---|
   | I | 0 to 5 days | √ | Petty | ___ |
   | II | 6 to 10 days | ___ | Minor | ___ |
   | III | 11 to 20 days | ___ | Misdem. | ___ |
   | IV | 21 to 60 days | ___ | Felony | √ |
   | V | 61 days and over | ___ | | |

6. Has this case been previously filed in this District Court?   **NO**   (Yes or No)
   If yes:
   Judge: _____ Case No. _____
     (Attach copy of dispositive order)
   Has a complaint been filed in this matter? _____ (Yes or No)
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case?   **NO**   (Yes or No)

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ___ Yes  √  No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ___ Yes  √  No

                 _____
                 Jeffrey Kaplan
                 ASSISTANT UNITED STATES ATTORNEY
                 Court ID No. A5500030

Penalty Sheet(s) attached                             REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: **STUART ROSENFELDT**

Case No:

Count #: 1

Conspiracy to Commit Campaign Finance Fraud, Bank Fraud and to Violate Civil Rights.

18 U.S.C. § 371

\* Max. Penalty:   5 years' imprisonment, $250,000 fine, 3 years' supervised release

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| STUART ROSENFELDT | ) | |
| | ) | |
| Defendant | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*